# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**REBA DANASTORG,**                                    Chapter 13
      Debtor                                    Case No. 13-13006-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Relief from Automatic Stay (the "Motion") filed by US Bank National Association as Indenture Trustee of Castle Peak 2011-Loan Trust Mortgage Backed Note, Series 2011-1 ("US Bank"), seeking relief from the automatic stay to proceed to exercise its rights pursuant to applicable federal and state law, including a summary process proceeding, as to real property located at 3 Whiting Lane, Unit 3, Building F, Hingham, Massachusetts (the "Property").  In its Motion, US Bank avers that it is the owner of the Property by virtue of a foreclosure deed dated March 27, 2013 and recorded on April 2, 2013 and seeks relief from stay "for cause" pursuant to 11 U.S.C. § 362(d)(1).

The Debtor filed an Objection to the Motion in which she states, inter alia, that the foreclosure sale conducted by US Bank was wrongful within the meaning of US Bank Nat'l Ass'n. v. Ibanez, 458 Mass. 637, 650-51 (2011), because the foreclosing entity was not the actual mortgagee or the holder of the promissory note at the time of the sale, adding that

the decision in <u>Bank of New York v. Bailey</u>, 460 Mass. 327 (2011),[1] "makes it clear that under Massachusetts law, merely presenting a foreclosure deed is insufficient when, as here, the moving party's title (i.e., it's "colorable" right to possession, within the meaning of <u>Grella v. Salem Five Cent Savings</u>, 42 F.3d 26 (1st Cir. 1994)), is challenged."

On August 7, 2013, the Debtor filed an Emergency Motion for Leave to Supplement Objection to Motion for Relief from Stay together with exhibits.   The Debtor in her Emergency Motion stated:

> [D]ebtor's counsel realized that the moving party had failed to provide the court with evidence that it was either the original mortgagee or its assignee (or the lawful agent of either). Since that relates to the primary issue presented, the documents provided herewith will tend to show that the moving party was not the original mortgage [sic], its assignee, or the lawful agent of either. With regard to ownership of the Promissory Note, *see* <u>Eaton v. FNMA</u>, 462 Mass. 569 (2012), the debtor has no information, but notes that the purported foreclosure took place after the <u>Eaton</u> decision, and thus <u>Eaton</u> controls.

The Court conducted a hearing on US Bank's Motion on August 8, 2013 and took the

---

[1] In <u>Bailey</u>, the court stated:

> In a summary process action for possession after foreclosure by sale, the plaintiff is required to make a prima facie showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded. *See* <u>Lewis v. Jackson</u>, 165 Mass. 481, 486–487, 43 N.E. 206 (1896); G.L. c. 244, § 15. BNY failed to submit an affidavit of sale "show[ing] that the requirements of the power of sale and of the statute have in all respects been complied with." <u>Id.</u>

460 Mass. at 334-35 (footnotes omitted).

Motion under advisement.   On August 12, 2013, the Court entered the following order,

observing:

> . . . At the August 8th hearing, a threshold issue arose regarding US Bank's
> standing to seek relief from the stay to evict the Debtor from the Property due
> to the provisions of the Mortgage in which the Lender thereunder, WMC
> Mortgage Corp, is referred to in Section D thereof as the "mortgagee under
> this Security Instrument" and MERS is referred to in Section C as the nominee
> for the Lender and "the beneficiary under this Security Instrument" but the
> Debtor mortgaged, granted and conveyed the Property, with the power of
> sale, to MERS pursuant to the Section of the Mortgage entitled "Transfer of
> Rights in the Property." The Debtor alleges that MERS was not the Mortgagee
> under the Mortgage and therefore it did not have the capacity to assign the
> Mortgage and that, as a result, US Bank conducted a wrongful foreclosure on
> the Property.

The Court ordered the parties to file briefs in support of their respective positions "[i]n light

of the threshold legal issue of standing raised by the Debtor," adding that it would

determine the Motion or schedule an evidentiary hearing, if necessary.

The parties complied with the Court's order and filed briefs. US Bank attached to its

Memorandum numerous exhibits, including the Condominium Unit Deed pursuant to

which the Debtor acquired the Property; the mortgage; four assignments; a Certificate of

Authorization, dated March 27, 2013, pursuant to which US Bank ratified that Orlans Moran

PLLC was authorized to make entry on the Property, bid  on its behalf at the foreclosure

auction, and execute necessary affidavits in conjunction with the foreclosure;  a Certificate

of Appointment, dated March 14, 2013, pursuant to which Orlans Moran, PLLC ratified and

confirmed  the appointment of Andrew Kadlick as its agent for purpose of foreclosing the

mortgage; a Certificate of Entry, dated September 13, 2012; a Foreclosure Deed dated March

3

27, 2013; an Affidavit of Sale executed by James Southard, Esq. of Orlans Moran, referencing
and attaching the mortgagee's notice of sale published on August 23, 2012, August 30, 2012
and September 6, 2012; and a "Post-Foreclosure Affidavit Regarding Note[,]
'Eaton' Affidavit[,]" pursuant to which Gina Gray, Vice President of Selene Finance, LP, as
servicer for US Bank, certified that as of the dates when the notice of sale relating to the
mortgage at issue were mailed and published pursuant to M.G.L. Chapter 244, Section 14
up to and including the Foreclosure Sale Date, the Foreclosing Mortgagee was: . . . [t]he
holder of the promissory note secured by the above mortgage."[2]

The material facts necessary to determine the Motion are not in dispute. Neither
party specifically requested an evidentiary hearing, although the Debtor requested that the
Motion be consolidated with her pending adversary proceeding against US Bank.[3] The
Court now makes the following findings of fact and conclusions of law in accordance with
Fed. R. Bankr. P. 7052.

## II. FACTS

---

[2] Although the foreclosure sale took place on September 13, 2012, the Affidavit
Regarding the Note was recorded on April 2, 2013.

[3] The Debtor filed a Complaint against US Bank, Orlans Moran PLLC, Wells Fargo
Bank Minnesota, NA; Homecomings Financial, Acqura Loan Services and Selene Finance,
LP on August 6, 2013. The Verified Complaint contains the following counts: Count I -
Declaration that the Foreclosure is Void; Count II - Violation of Federal and State Fair
Debt Collection Practices Act; Count III - Chapter 93A Counterclaim to Motion for Relief
from Stay; and Count IV - RESPA. As of the date of this Memorandum, US Bank, Selene
Finance, LP and Acqura Loan Services have filed a joint answer to the Complaint. The
remaining defendants have not filed answers or other responsive pleadings, although the
time within which to do so has expired.

On or about December 3, 2002, Debtor became acquired the Property pursuant to a

Condominium Unit Deed. On or about July 18, 2005, in connection with refinancing the

Property, WMC Mortgage Corp. ("WMC"), identified as the Lender on the mortgage,

extended a loan to the Debtor in the original principal amount of $476,250. The loan was

evidenced by a promissory note executed by Debtor, but a copy of the note was not

submitted as an exhibit to any documents filed with the Court in connection with the

Motion. The note was secured by a mortgage on the Property executed by Debtor. In the

mortgage, Mortgage Electronic Registration Systems, Inc. ("MERS") was identified as the

"beneficiary under this Security Instrument" and described as "acting solely as a nominee

for Lender and Lender's successors and assigns,", i.e., WMC. In addition to being identified

as the Lender, WMC also was identified as the "the mortgageee under this Security

Instrument." The mortgage was duly recorded in the Plymouth County Registry of Deeds

on July 25, 2005.

The mortgage provides in pertinent part the following

This Security Instrument secures to Lender (i) the repayment of the Loan . .
. .; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, *Borrower does hereby
mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's
successors and assigns) and to the successors and assigns of MERS with power of
sale, the following described property* . . . .which currently has the address of 3
Whiting Lane, Hingham, Massachusetts 02043 . . . TOGETHER WITH all the
improvements now or hereafter erected on the property . . . . All of the
foregoing is referred to in this Security Instrument as the "Property."
*Borrower understands and agrees that MERS holds only  legal title to the interests
granted by Borrower in this Security Instrument, but, if necessary to comply with
law or custom, MERS (as nominee for Lender and Lender's successors and assigns)
has the right to exercise any or all of those interests, including but not limited to, the*

5

> *right to foreclose and sell the Property*; and to take any action required of Lender
> including, but not limited to, releasing and canceling the Security Instrument.

(emphasis supplied).

On or about August 3, 2009, MERS assigned the "mortgage and the note and claim" to Residential Funding Real Estate Holdings, LLC ("Residential") by assignment recorded on September 16, 2009 in the Plymouth County Registry of Deeds in Book 37720 at Page 341. On or about August 23, 2010, Residential assigned the mortgage to Residential Funding Company LLC fka Residential Funding Corporation ("Residential 2") by assignment recorded on December 14, 2010 in the Plymouth County Registry of Deeds in Book 39398 at Page 160. On or about May 4, 2011, Residential 2 assigned the mortgage to CPCA Trust 1 by assignment recorded on May 26, 2011 in the Plymouth County Registry of Deeds in Book 39968 at Page 229. On or about April 4, 2012, CPCA Trust 1 assigned the mortgage to US Bank by assignment recorded on July 12, 2012 in the Plymouth County Registry of Deeds in Book 41637 at Page 11. As a result of Debtor's default under the terms of the note and mortgage for nonpayment, and following statutory notice, US Bank through the firm of Orlans Moran PLLC conducted a foreclosure sale of the Property on September 13, 2012 pursuant to the statutory power of sale in the mortgage. US Bank was the successful bidder at the sale. It recorded a Foreclosure Deed, dated March 14, 2013, on April 2, 2013 in the Plymouth County Registry of Deeds in Book 42884 at Page 158. According to US Bank, on or about April 30, 2013, it mailed the Debtor a Notice to Vacate, requiring her to vacate the Property.

Approximately eight months after the foreclosure sale, on May 20, 2013, and approximately one month after the issuance of the Notice to Vacate, the Debtor filed a petition under Chapter 13. On June 17, 2013, the Debtor filed her Schedules of Assets and Liabilities. She listed the Property on Schedule A-Real Property with a value of $587,000, subject to secured claims in the sum of $582,250. The Debtor proposed a "cure and maintain plan" pursuant to 11 U.S.C. § 1322(b)(5) to which US Bank has objected.

## III. POSITIONS OF THE PARTIES

A. US Bank

US Bank identifies the issue as whether MERS was the mortgagee of the mortgage thereby enabling it to effectively assign legal title. According to US Bank, the provisions of the mortgage reproduced above, while not specifically labeling MERS as the mortgagee, contain a grant to MERS of all rights typically associated with that of a mortgagee, such as the power to assign and the power to foreclose. Citing, inter alia, Starr v. Fordham, 420 Mass. 178, 190, 648 N.E.2d 1261, 1269 (1995) ("'[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention.'"),[4] it

---

[4] The court also stated that contracts must be construed "with reference to the situation of the parties when they made it and to the objects sought to be accomplished." Id. It added:

> As a result, the scope of a party's obligations cannot "be delineated by isolating words and interpreting them as though they stood alone. Commissioner of Corporations & Taxation v. Chilton Club, 318 Mass. 285, 288, 61 N.E.2d 335 (1945). Not only must due weight be accorded to the

maintains that the intent of the parties must be gathered from a fair construction of the

contract as a whole.  It adds that interpreting the mortgage to mean that WMC is the only

party with the power to assign legal title would ignore plain language to the contrary and

would render MERS's role as superfluous, producing an irrational result.  US Bank cites

Eaton v. Fed. Nat'l Mortg. Assoc., 462 Mass. 569, 586, 969 N.E.2d 1118, 1131 (2012), for the

proposition that the Supreme Judicial Court defined the term mortgagee as not only the

note holder, but one who acts as the authorized agent of the note holder, to stand "in the

shoes' of the mortgagee.[5]  US Bank also cites Culhane v. Aurora Loan Servs. of Nebraska,

---

    immediate context, but no part of the contract is to be disregarded." Boston
    Elevated Ry. v. Metropolitan Transit Auth., 323 Mass. 562, 569, 83 N.E.2d
    445 (1949).

Starr v. Fordham, 420 Mass. at 190, 648 N.E.2d 1269.


    [5] The court in Eaton stated:

    [W]e construe the term "mortgagee" in G.L. c. 244, § 14, to mean a
    mortgagee who also holds the underlying mortgage note. The use of the
    word "mortgagee" in § 14 has some ambiguity, but the interpretation we
    adopt is the one most consistent with the way the term has been used in
    related statutory provisions and decisional law, and, more fundamentally,
    the one that best reflects the essential nature and purpose of a mortgage as
    security for a debt. See Negron v. Gordon, 373 Mass. at 204, 366 N.E.2d 241,
    and cases cited; Maglione v. BancBoston Mtge. Corp., 29 Mass. App. Ct. at
    90, 557 N.E.2d 756, and cases cited. See generally Restatement (Third) of
    Property (Mortgages) § 1.1 comment. (1997) ("The function of a mortgage is
    to employ an interest in real estate as security for the performance of some
    obligation. . . . Unless it secures an obligation, a mortgage is a nullity").

Eaton, 462 Mass. at 584-85, 969 N.E.2d at 1129-30.  The court added that principles of
agency apply and a mortgagee may act as agent of the note holder.  It also observed:

708 F.3d 282, 293 (1st Cir. 2013), for the proposition that the MERS framework is faithful to

the tenants of Massachusetts mortgage law, giving it the ability to assign mortgage.[6]

> The dictionary definition of "mortgagee" is consistent with the construction
> we give to the term. "[M]ortgagee" is defined as "[o]ne to whom property is
> mortgaged; the mortgage creditor, or lender." Black's Law Dictionary 1104
> (9th ed.2009). This definition does not draw a clear distinction between a
> mortgagee and a note holder; in fact, it points the other way, suggesting
> that the mortgagee is the note holder (i.e., lender). As noted by the Supreme
> Court of Kansas, the legal dictionary definition reflects the fact that the law
> "generally understands that a mortgagee is not distinct from a lender."
> Landmark Nat'l Bank v. Kesler, 289 Kan. 528, 539, 216 P.3d 158 (2009).
> Accord Mortgage Elec. Registration Sys., Inc. v. Saunders, 2 A.3d 289, 295
> (Me. 2010), quoting Black's Law Dictionary, supra ("The plain meaning and
> common understanding of mortgagee is '[o]ne to whom property is
> mortgaged,'" meaning mortgage creditor or lender).

462 Mass. at 584 n.22, 968 N.E.2d at 1130 n.22.  The Supreme Judicial Court concluded by
stating:

> [W]e do not conclude that a foreclosing mortgagee must have physical
> possession of the mortgage note in order to effect a valid foreclosure. There
> is no applicable statutory language suggesting that the Legislature intended
> to proscribe application of general agency principles in the context of
> mortgage foreclosure sales. Accordingly, we interpret G.L. c. 244, §§ 11–
> 17C (and particularly § 14), and G.L. c. 183, § 21, to permit one who,
> although not the note holder himself, acts as the authorized agent of the
> note holder, to stand "in the shoes" of the "mortgagee" as the term is used
> in these provisions.

462 Mass. 586, 969 N.E.2d at 1131 (footnotes omitted).

[6] The First Circuit stated:

> Massachusetts law makes pellucid that the mortgage and the note are
> separate instruments; when held by separate parties, the mortgagee holds a
> bare legal interest and the noteholder enjoys the beneficial interest. See
> Eaton, 969 N.E.2d at 1124. The mortgagee need not possess any scintilla of a
> beneficial interest in order to hold the mortgage.  Thus, MERS's role as

B. <u>The Debtor</u>

The Debtor argues that MERS was never the mortgagee under the mortgage.  She
asserts that the mortgage document plainly and unambiguously defined WMC as the
"mortgagee" and MERS as the "beneficiary."  In her view, because WMC explicitly retained
"mortgagee" status, MERS, as "beneficiary," had no authority to assign the mortgage, and,

---

mortgagee of record and custodian of the bare legal interest as nominee for
the member-noteholder, and the member-noteholder's role as owner of the
beneficial interest in the loan, fit comfortably with each other and fit
comfortably within the structure of Massachusetts mortgage law.

Here, moreover, MERS had the authority twice over to assign the mortgage
to Aurora. This authority derived both from MERS's status as equitable
trustee and from the terms of the mortgage contract. We already have
explained the question of the resulting trust that arises in this context. . . .

The terms of the mortgage contract, to which the plaintiff expressly agreed,
authorize the transfer to Aurora. The mortgage papers denominated MERS
as mortgagee "solely as nominee for [Preferred] and [Preferred]'s successors
and assigns." Under Massachusetts law, a nominee in such a situation holds
title for the owner of the beneficial interest. *See* <u>Morrison v. Lennett,</u> 415
Mass. 857, 616 N.E.2d 92, 94–95 (1993); Black's Law Dictionary 1149. MERS
originally held title as nominee for Preferred; Preferred assigned its
beneficial interest in the loan to Deutsche; and Deutsche designated Aurora
as its loan servicer. MERS was, therefore, authorized by the terms of the
contract to transfer the mortgage at the direction of Aurora.

In the assignment, MERS transferred to Aurora what it held: bare legal title
to the mortgaged property.FN8 That transfer was valid. *See* <u>Eaton</u>, 969
N.E.2d at 1124. It follows that Aurora properly held the mortgage and thus
possessed the authority to foreclose. Mass. Gen. Laws ch. 183, § 21; <u>id.</u> ch.
244, § 14; *see* <u>Eaton</u>, 969 N.E.2d at 1124, 1129; <u>Ibanez</u>, 941 N.E.2d at 53.

<u>Culhane</u>, 708 F.3d at 293 (footnote omitted).

as a result, its assignment to Residential was void, and all subsequent assignments were

ineffective.  Thus, she posits the foreclosure sale was void as well.

The Debtor also urges this court to adopt the reasoning of the court in <u>Farmer v. Fed.</u>

<u>Nat'l Mortg. Ass'n.</u>, No. 2012-3736B, 31 Mass. L. Rptr. 204, 2013 WL 1976240 (Mass. Super.

Ct. May 9, 2013).   In that case, the mortgage identified MERS as the mortgagee but

otherwise contained language identical to the language utilized in the mortgage executed

by the Debtor in favor of WMC Corp.  The court in <u>Farmer</u> stated:

> The question   . . . becomes: what does it mean that MERS' capacity as
> mortgagee is "solely as nominee for Lender (Omega) and (its) successors and
> assigns?"
>
> Black's Law Dictionary (9th ed.2009) defines "nominee" as "2. A person
> designated to act in place of another, usu. in a very limited way. 3. A party
> who holds bare legal title for the benefit of others or who receives and
> distributes funds for the benefit of others." Furthermore, as developed in the
> limited case law on this issue:
>
> "[T]he word 'nominee' ordinarily indicates one designated to act for another
> as his/her representative in a rather limited sense [<u>Schuh Trading Co. v.</u>
> <u>Commissioner of Internal Revenue</u>, 95 F.2d 404, 411 (7th Cir.1938) ]. In its
> commonly accepted meaning, the word 'nominee' connotes the delegation of
> authority to the nominee in a representative capacity only, and does not
> connote the transfer or assignment to the nominee of any property in or
> ownership of the rights of the person nominating him/her [<u>Cisco v. Van Lew</u>,
> 60 Cal.App.2d 575, 583–584 (1943); <u>Middle East Trading & Marine Service,</u>
> <u>Inc. v. Mercantile Finance Corp.</u>, 49 Ill.App.3d 222 (1977); <u>see</u> <u>Lee v. Ravanis</u>,
> 349 Mass. 742, 745 (1965) ]." <u>Kolakowski v. Finney</u>, 1983 Mass.App. Div. 360,
> 363–364 (1983).
>
> This question, what does it mean to be "mortgagee solely as nominee of
> lender," was specifically reserved in <u>Eaton v. Federal National Mortgage</u>
> <u>Association</u>, 462 Mass. 569, 590 fn 29 (2012). Specifically, in fn [sic] 29 the SJC
> stated:

"As noted at the outset of this opinion, the mortgage identifies MERS as mortgagee, but one that acts as the 'nominee' of the lender. It is not clear what 'nominee' means in this context, but the use of the word may have some bearing on the agency question. We express no opinion whether MERS or Green Tree was acting as agent of the note holder or with the note holder's authority at the time of the foreclosure sale. Eaton is entitled to pursue discovery on this issue in connection with her Superior Court action."

Given the limited appellate case law in Massachusetts, this court reasonably infers that "nominee" in this context means that MERS can only act in its nominee capacity when it acts as the agent of Omega.

Farmer, 2013 WL 1976240 at *8-9 (footnotes omitted). The court in Farmer concluded "it is incumbent on the defendants asserting the validity of MERS' . . . assignment of its interest in the mortgage to show [the lender's] direction to MERS." Id. at *9 (footnote omitted). The Debtor points to the absence of evidence as to the extent of MERS's agency authority and the absence of evidence as to WMC's directions, if any, to MERS to assign the mortgage, adding that MERS did not have the power to assign the mortgage in any event. In other words, the Debtor argues that because MERS was not named as "mortgagee" it could not assign the authority   to carry out the foreclosure sale, and, even if it were designated mortgagee, there is no evidence as to how and/or when WMC directed its actions.

Dismissing the language in the mortgage, i.e., "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with power of sale . . .," and US Bank's reliance on that language, the Debtor states that it is not the mortgage that grants rights to MERS, but the agency agreement between WMC and MERS, adding that the Debtor  had

12

no contractual relationship with MERS and emphasizing that "[i]t is whatever agency

agreement WMC and MERS had that defines what powers MERS had, and that agreement

is not in the present record." The Debtor also states that "there is no evidence of what the

rights granted by WMC to MERS are but "the foregoing case law [Farmer v. Fed. Nat'l

Morg. Ass'n, 2013 WL 1976240 at *9] makes is [sic] clear that an exercise of those rights is

permissible only when the lender, as principal in the agency relationship, authorizes such

exercise."

> The Debtor focuses on the identification of MERS as "beneficiary," stating:
>
> MERS and WMC chose to make a distinction between "mortgagee" and "beneficiary" and it is not appropriate for the court to disregard, at the request of a third party (i.e., U.S. Bank), the distinction that the parties to the agency relationship chose to use to define that relationship. In the present case, it is perfectly rational (in the absence of contrary evidence) to construe the mortgage to mean, for example, that WMC retained the rights of a mortgagee (including assigning or foreclosing it), while MERS, as beneficiary, was merely the "record keeping" entity that kept track of assignments if and when WMC chose to assign the mortgage, which it never did.

The Debtor cites US Bank Nat'l Ass'n v. Ibanez, 458 Mass 637 (2011), for the proposition that

absent a valid assignment WMC remained the mortgagee. She relies upon the following

language in the decision:

> In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage. Barnes v. Boardman, 149 Mass. 106, 114, 21 N.E. 308 (1889). Rather, the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment. Id. ("In some jurisdictions it is held that the mere transfer of the debt, without any assignment or even mention of the mortgage, carries the

13

mortgage with it, so as to enable the assignee to assert his title in an action at law. . . . This doctrine has not prevailed in Massachusetts, and the tendency of the decisions here has been, that in such cases the mortgagee would hold the legal title in trust for the purchaser of the debt, and that the latter might obtain a conveyance by a bill in equity"). *See* <u>Young v. Miller</u>, 72 Mass. 152, 6 Gray 152, 154 (1856). In the absence of a valid written assignment of a mortgage or a court order of assignment, the mortgage holder remains unchanged. This common-law principle was later incorporated in the statute enacted in 1912 establishing the statutory power of sale, which grants such a power to "the mortgagee or his executors, administrators, successors or assigns," but not to a party that is the equitable beneficiary of a mortgage held by another. G.L. c. 183, § 21, inserted by St.1912, c. 502, § 6.

<u>Ibanez</u>, 458 Mass. at 652-53.

The Debtor asserts that "absent some evidence to the contrary, MERS took title as a representative of WMC, and there [was] no 'transfer or assignment to [MERS] of any property in or ownership of the rights of [WMC],'" including the right to assign or foreclose the mortgage. In her view, US Bank completely ignored the holding in <u>Eaton v. Fed. Nat'l Mortg. Ass'n.</u>, 462 Mass. 569 (2012), that the foreclosing entity must be the holder the promissory note as well as the mortgage, or the lawful agent of that single entity. She adds that US Bank proffered no evidence that the promissory note was ever negotiated in accordance with the Uniform Commercial Code. The Debtor concludes:

> U.S. Bank has failed to make such a demonstration since it has failed to trace its chain of title to the mortgage or demonstrate that it was the lawful holder of the promissory note. Given that a motion for relief from stay is a "summary proceeding" in which the court does not necessarily finally determine the issues presented, <u>Id.</u>, the motion should be denied without prejudice to determination in adversary proceeding number 13-01324, in which U.S. Bank and certain other parties has filed [sic] an answer, or the motion should be consolidated with the adversary proceeding.

## IV. DISCUSSION

14

A. Standard Applicable to Lift Stay Motions

According to the United States Court of Appeals for the First Circuit Grella v. Salem

Five Cent Savs. Bank, 42 F.3d 26 (1st Cir.1994),

> The limited grounds set forth in the statutory language, read in the context of
> the overall scheme of § 362, and combined with the preliminary, summary
> nature of the relief from stay proceedings, have led most courts to find that
> such hearings do not involve a full adjudication on the merits of claims,
> defenses, or counterclaims, but simply a determination as to whether a
> creditor has a colorable claim to property of the estate.

Id. at 32. The Grella court further observed:

> The statutory and procedural schemes, the legislative history, and the case
> law all direct that the hearing on a motion to lift the stay is not a proceeding
> for determining the merits of the underlying substantive claims, defenses, or
> counterclaims. Rather, it is analogous to a preliminary injunction hearing,
> requiring a speedy and necessarily cursory determination of the reasonable
> likelihood that a creditor has a legitimate claim or lien as to a debtor's
> property. If a court finds that likelihood to exist, this is not a determination
> of the validity of those claims, but merely a grant of permission from the
> court allowing that creditor to litigate its substantive claims elsewhere
> without violating the automatic stay.

Id. at 33 (footnote omitted).

B. Analysis

The United States Court of Appeals for the First Circuit in Culhane v. Aurora Loan

Servs. of Nebraska, 708 F.3d 282 (1st Cir. 2013), held that a mortgagor has standing to

challenge a mortgage assignment as invalid, ineffective, or void "if, say, the assignor had

nothing to assign or had no authority to make an assignment to a particular assignee." Id.

at 291. See also Ross v. Deutsche Bank Nat'l Trust Co., __ F.Supp.2d __, 2013 WL 1225621

at *4 (D. Mass March 27, 2013) (citing Culhane, 708 F.3d at 290–91).

15

The Court, in the context of US Bank's Motion, rejects the Debtor's argument that the assignment from MERS to Residential is void.  The Court finds that US Bank established a colorable claim for relief from the automatic stay based upon the provisions of the mortgage.  The mortgage contains an express grant of the mortgage to MERS, i.e. "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with power of sale, the following described property . . . .").    Additionally, the mortgage provides: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS  (as nominee Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property . . .").  The Court concludes that this unambiguous grant of a mortgage provided MERS with the authority to execute the assignment to Residential  dated August 3, 2009.  The identification of WMC as "mortgagee"  does not change that result; nor does the identification of MERS as the beneficiary of the Security Instrument.  The Court construes the mortgage as whole and rejects the notion that the language used to identify the lender and MERS requires the Court to ignore the granting clause in the mortgage.  As the court in Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011), explained:

> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in

16

county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

Id. at 1039.  *Cf.* Edelstein v. Bank of New York Mellon, 286 P.3d 249 (2013).[7]

---

[7] In a case in which the mortgage identified MERS as both a beneficiary and the nominee of the Lender using language substantially similar to that employed in the WMC mortgage, the Supreme Court of Nevada stated:

> In this case, New American Funding was the initial holder of the note, whereas MERS was characterized in the deed of trust as "a separate corporation that is acting solely as a *nominee* for Lender and Lender's successors and assigns." (Emphasis added.) The deed of trust also stated that "MERS is the *beneficiary* under this Security Instrument." (Emphasis added.) When interpreting a written agreement between parties, this court "is not at liberty, either to disregard words used by the parties . . . or to insert words which the parties have not made use of. It cannot reject what the parties inserted, unless it is repugnant to some other part of the instrument." Royal Indem. Co. v. Special Serv., 82 Nev. 148, 150, 413 P.2d 500, 502 (1966) (internal quotations omitted). Thus, we examine the effect of designating MERS both as a nominee for New American Funding and its successors and assigns, and as a beneficiary of the deed of trust. Other courts have held that MERS' designation as nominee "is more than sufficient to create an agency relationship between MERS and the Lender and its successors." In re Tucker, 441 B.R. at 645; In re Martinez, 444 B.R. 192, 205–06 (Bankr. D. Kan. 2011) (concluding that based on the language in the relevant documents giving MERS a role as "nominee" for "[the lender] and its successors and assigns, . . . sufficient undisputed evidence [was presented] to establish that MERS was acting as an agent," and that the choice of the word " 'nominee,' rather than 'agent,' does not alter the relationship between the [ ] . . . parties, especially given the fact that the two terms have nearly identical legal definitions"); Cervantes, 656 F.3d at 1044 (explaining MERS' role as an agent).

> We agree with the reasoning of these jurisdictions and conclude that, in this case, MERS holds an agency relationship with New American Funding and its successors and assigns with regard to the note. Pursuant to the express language of the deed of trust, "MERS (as nominee for Lender and Lender's

successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property,' and to take any action required of Lender. . . ." Accordingly, MERS, as an agent for New American Funding and its successors and assigns, had authority to transfer the note on behalf of New American Funding and its successors and assigns. . . . .

The deed of trust also expressly designated MERS as the beneficiary; a designation we must recognize for two reasons. First, it is an express part of the contract that we are not at liberty to disregard, and it is not repugnant to the remainder of the contract. *See* Royal Indem. Co., 82 Nev. at 150, 413 P.2d at 502. In Beyer v. Bank of America, the United States District Court for the District of Oregon examined a deed of trust which, like the one at issue here, stated that "MERS is the beneficiary under this Security Instrument." 800 F.Supp.2d 1157, 1160–62 (D. Or. 2011). After examining the language of the trust deed and determining that the deed granted "MERS the right to exercise all rights and interests of the lender," the court held that "MERS [is] a proper beneficiary under the trust deed." Id. at 1161–62. Further, to the extent the homeowners argued that the lenders were the true beneficiaries, "the text of the trust deed contradicts [their] position." Id. at 1161; *accord* Reeves v. ReconTrust Co., N.A., 846 F.Supp.2d 1149 (D. Or. 2012). Similarly here, the deed of trust's text, as plainly written, repeatedly designated MERS as the beneficiary, and we thus conclude that MERS is the proper beneficiary. Second, it is prudent to have the recorded beneficiary be the actual beneficiary and not just a shell for the "true" beneficiary. In Nevada, the purpose of recording a beneficial interest under a deed of trust is to provide "constructive notice . . . to all persons." NRS 106.210. To permit an entity that is not really the beneficiary to record itself as the beneficiary would defeat the purpose of the recording statute and encourage a lack of transparency. However, whether designating MERS as the beneficiary on the deed of trust demonstrates an agreement to separate the promissory note from the deed of trust is an issue of first impression for this court.

Although we conclude that MERS is the proper beneficiary pursuant to the deed of trust, that designation does not make MERS the holder of the note. Designating MERS as the beneficiary does, as Edelstein suggests, effectively "split" the note and the deed of trust at inception because, as the parties agreed, an entity separate from the original note holder (New American

18

In addition, the court in <u>Eaton</u> recognized the ambiguity in the term "mortgagee." In construing the mortgage for purposes of the Motion, the Court, to reiterate, rejects the Debtor's emphasis of single words rather than the intent evidence by the mortgage read as a whole, although as the court in <u>Edelstein</u> determined the status of MERS as beneficiary

---

Funding) is listed as the beneficiary (MERS). *See generally* <u>In re Agard</u>, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011). And a beneficiary is entitled to a distinctly different set of rights than that of a note holder. *See* <u>Cervantes</u>, 656 F.3d at 1039 (explaining that a "holder of [a] note is only entitled to repayment," whereas a "holder of [a] deed alone does not have a right to repayment," but rather, has the right "to use the property as a means of satisfying repayment" (emphasis added)) . . . .

However, this split at the inception of the loan is not irreparable or fatal. "Separation of the note and security deed creates a question of what entity would have authority to foreclose, but does not render either instrument void." <u>Morgan v. Ocwen Loan Servicing, LLC</u>, 795 F.Supp.2d 1370, 1375 (N.D. Ga. 2011). Rather, "[a]ssuming arguendo, that there was a problem created by the physical separation of the Security Deed from the Note, that problem vanishe[s]" when the same entity acquires both the security deed and the note. <u>In re Corley</u>, 447 B.R. 375, 384–85 (Bankr. S.D. Ga. 2011). Indeed, while entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan. <u>In re Tucker</u>, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010). Instead, "[a] promissory note and a security deed are two separate, but interrelated, instruments," <u>Morgan</u>, 795 F.Supp.2d at 1374, and their transfers are also "distinctly separate," <u>Leyva</u>, 127 Nev. at __, 255 P.3d at 1279.

286 P.3d at 258-60 (footnotes omitted).  The court thus held that MERS is capable of being a valid beneficiary of a deed of trust, separate from its role as an agent (nominee) for the lender and that such separation is not irreparable or fatal to either the promissory note or the deed of trust, although it does prevent enforcement of the deed of trust through foreclosure unless the two documents are ultimately held by the same party. <u>Id.</u> at 260.

and as nominee are reconcilable.  MERS was granted authority to act for WMC solely as its

nominee or for its successors and assigns. The Debtor's suggestions that US Bank did not

hold either the mortgage or the note at the time of the foreclosure sale are without

evidentiary support of any sort.  More importantly, they are belied by the exhibits attached

to US Bank's Memorandum.   The Debtor seeks to thwart her eviction by challenging the

assignment, relief which is in the nature of an injunction.  *See* Grella, 42 F.3d at 33.  As the

court noted in Eaton, "an allegation that is supported on "information and belief" does not

supply an adequate factual basis for the granting of a preliminary injunction."   462 Mass.

at 590, 969 N.E.2d at  1134.

　　　　In this regard, the Court also is not persuaded by the decision in Farmer.  In the

context of a motion for relief from stay, the requirement that foreclosing mortgagees

establish the validity of assignments by showing the lender's direction to MERS would

undermine the  summary nature of lift stay proceedings.  Moreover, the court in Farmer

recognized that other courts, including the First Circuit in Culhane, and other Superior

Court justices disagreed with its determination.  Farmer, 2012 WL 1976240 at *9 n.18.

## V. CONCLUSION

　　　　In view of the foregoing, the Court shall enter an order granting the Motion of US

Bank for Relief from the Automatic Stay.

　　　　　　　　　　　　　　　　By the Court,

　　　　　　　　　　　　　　　　*Joan N. Feeney*

　　　　　　　　　　　　　　　　Joan N. Feeney
　　　　　　　　　　　　　　　　United States Bankruptcy Judge

Dated: September 16, 2013